SOUTHWEST BANK OF OMAHA, A BANKING CORPORATION, APPELLEE, V. JOHN J. MORITZ, APPELLANT, AND MERLE NICOLA, TRUSTEE IN BANKRUPTCY, INTERVENOR-APPELLANT.

277 N. W. 2d 430

Filed April 10, 1979. No. 42012.

Maureen Fitzgerald of Thompson, Crounse & Pieper, for appellants.

Michael G. Helms of Schmid, Ford, Mooney, Frederick & Caporale, for appellee.

Heard before BOSLAUGH, MCCOWN, CLINTON, and WHITE, JJ., and REIMER, District Judge.

CLINTON, J.

This case involves the financial affairs of Verlan J. Rumbaugh, who in 1974 began the operation of a hardware store as a sole proprietorship under the trade name of R & S Sentry Hardware, and in 1975 incorporated the business as R & S Hardware, Inc., which corporation filed a petition for voluntary bankruptcy in 1977. R & S Hardware, Inc., was wholly owned by Rumbaugh.

The appeal arises from two separate actions which were, pursuant to a stipulation of the parties and by order of the District Court, joined for trial in

that court. In one action, Southwest Bank of Omaha sued John J. Moritz for conversion of certain store fixtures, equipment, and machinery on which the bank claimed a security interest by virtue of a security agreement given to the bank by Verlan J. Rumbaugh and his wife, Gladys H. Rumbaugh, to secure a loan of $30,000 made for the purpose of starting the business. Moritz claimed a landlord's lien in the same property by reason of the terms of the lease between Rumbaugh as tenant and S & H Shopping Center, Inc., as lessor, to whose interest Moritz had succeeded. Merle J. Nicola, trustee in bankruptcy of R & S Hardware, Inc., doing business as R & S Sentry Hardware, intervened in that suit, claiming the same property adversely to both the bank and Moritz. In the second action, Nicola, as trustee in bankruptcy, sought a money judgment against the bank for the value of certain inventory of the hardware store which the bank had repossessed and sold and on which it claimed a security interest by virtue of the same instruments earlier described.

A jury was waived and the combined cases were tried to the court. In a single judgment the court found for the bank on the cause against Moritz and rendered judgment against Moritz in the sum of $6,486.88, the net value of the fixtures converted by Moritz. The court, for reasons we later describe, found the trustee had no interest in that property. The court also rendered judgment for the bank on the trustee's claim against the bank for the value of the inventory which the bank had repossessed and sold. Both the trustee and Moritz appealed from orders overruling their respective motions for new trial.

Later, the parties filed the following stipulation in this court: "For good and valuable consideration, the parties hereto stipulate and agree as follows:

"1. Upon full execution of this agreement, Intervenor Merle J. Nicola, Trustee, hereby agrees to dis-

miss the appeal in the above-referenced action as to Defendant John J. Moritz only, to the effect that the judgment of the District Court of Douglas County, Nebraska, at Doc. 721, No. 257, rendered on January 27, 1978, shall be a final judgment as between said Intervenor and Defendant John J. Moritz upon said dismissal.

"2. Upon full execution hereof, Defendant John J. Moritz hereby agrees to dismiss his appeal in the above-referenced action as to all parties hereto, to the effect that the said judgment of the said District Court referred to in paragraph 1 hereof shall be a final judgment as between said Defendant John J. Moritz and the Plaintiff and Intervenor herein.

"3. Plaintiff Southwest Bank hereby acknowledges that it has not filed a cross-appeal against Defendant John J. Moritz and further agrees that it will not file any such cross-appeal against Defendant John J. Moritz and that the said judgment of the said District Court referred to in paragraph 1 shall be a final judgment as between Plaintiff Southwest Bank and said Defendant John J. Moritz.

"4. Each party shall pay its own costs."

The stipulation was executed by all three parties by their attorneys of record. The caption on the stipulation and the docket numbers contained in the first paragraph thereof are those referring to the first cause above described.

One of the issues which the parties raise in their arguments to this court is the effect of the stipulation as between the bank and the trustee.

On this appeal, the appellant trustee attacks the following findings of the trial court: (1) R & S Hardware, Inc., never came into existence as a corporation. (2) The assets of Rumbaugh, doing business as R & S Sentry Hardware, were never transferred to the bankrupt R & S Hardware, Inc., and therefore the trustee has no claim thereon. (3) The financing statement was in proper form and gave

constructive notice to the trustee of the bank's lien.

The matters for decision will be better understood if a chronological statement of events is set forth.

On May 20, 1974, Verlan J. Rumbaugh and his wife, Gladys H. Rumbaugh, borrowed $30,000 from the bank and executed and delivered to the bank a promissory note for that amount. At the same time, a security agreement and financing statement were prepared. The security agreement was signed by both Mr. and Mrs. Rumbaugh. The financing statement described the debtor as R & S Sentry Hardware, 2918 South 84th, Omaha, Nebraska; gave the name of the secured party as Southwest Bank of Omaha, 8800 West Center Road, Omaha, Nebraska; and listed the following collateral: "Inventory in Hardware store, fixtures and accounts receivable owned now and acquired after this date." The box marked proceeds was checked. The financing statement did not bear the signature of Verlan J. Rumbaugh, but in the place for execution by signature of debtor, appeared a signature, "By Gladys H. Rumbaugh." The financing statement was filed in the office of the Douglas County clerk on May 21, 1974. Nothing in the record indicates in what name the financing statement was indexed by that officer.

It is not disputed that Verlan J. Rumbaugh initially operated the hardware store at the address above indicated as a sole proprietor under the trade name of R & S Sentry Hardware. In August of 1975, Rumbaugh took all the steps necessary to create a corporation named R & S Hardware, Inc., and on August 27, 1975, the Secretary of State certified the articles of incorporation and certified the corporation was in good standing. The corporate records indicate that on November 26, 1975, the first meeting of the stockholders was held and the minutes of the meeting recite: "The Chairman noted that Verlan J. Rumbaugh had purchased 400 shares by paying into the Treasury the par value of the shares in cash or the

equivalent thereof in property useful and usable in the business of the corporation pursuant to the terms of the plan for issuance of stock under Sec. 1244 of the Internal Revenue Code (1954)." A stock certificate for 400 shares of the capital stock of the corporation was issued on the same date in the name of Verlan J. Rumbaugh and delivered to him. Rumbaugh was the sole shareholder of the corporation.

On November 26, 1975, the property described in the security agreement and financing statement was located in the store at the address previously mentioned. The business continued with inventory being sold and replaced, debts incurred, and payments made. Rumbaugh, after incorporation, continued to use the trade name R & S Sentry Hardware and was billed by his creditors in that name. Payments for purchases and on indebtedness and other expenses of the business were made by checks which bore the corporate name R & S Hardware, Inc., as payor. The checks were all drawn on the bank and paid from the account standing in the name of R & S Sentry Hardware in Southwest Bank, that account never having been transferred to the corporate name.

The record indicates that Rumbaugh continued to use the trade name of R & S Sentry Hardware in advertising the business. The corporation obtained an employer's federal identification number and the tax deposit account bore the corporate name, as did the unemployment contribution account with the State of Nebraska.

During 1976 Rumbaugh and his wife, on their individual signatures, borrowed additional funds from the bank and apparently placed the proceeds in the business account. Personal property taxes of the business were assessed in the trade name.

The bank called the loan of May 20, 1974, on November 5, 1976, which then had an unpaid and past due balance, demanded and received possession of the collateral at the place of business, and locked

the store. It later sold the inventory and some of the fixtures. Thereafter, before the bank could dispose of the remaining fixtures, Moritz changed locks on the door and took possession of and sold the remaining fixtures for the net value of which judgment was later rendered against him as previously indicated.

On January 21, 1977, "R & S Hardware, Inc., a/k/a R & S Sentry Hardware," filed a petition for voluntary bankruptcy, listing numerous creditors and assets of only $680, consisting of a balance in the business checking account and office equipment. The assets schedule bore the following notation: "Fixtures purchased as proprietorship and never transferred to corporation, worth $10,000, same with inventory of $30,000."

### The Effect of the Stipulation

The bank argues that, by reason of the stipulation for the dismissal of Moritz in this court and the concomitant stipulation as to the finality of the bank's judgment against Moritz, the trustee can have no claim as to proceeds from the sale of the fixtures which that judgment, in effect, represents. Its reasoning, as stated in the brief, is: "The trustee had no claim against the Bank, since the Bank did not have possession of the fixtures or their proceeds. The trustee has now stipulated that he is not entitled to recover the fixtures or their proceeds from Moritz, while at the same time stipulating that the Bank is entitled to recover from Moritz. By so doing, the trustee is precluded, by reason of res judicata, from making further claims against either the Bank or Moritz for the value of the fixtures." The trustee's response is: "The trustee, in paragraph 1, agrees to dismiss his appeal against the interest of John Moritz, thereby rendering the judgment of the District Court declaring that John Moritz had no interest in the proceeds of the bankrupt's fixtures, a final judgment. Paragraph 2 is the section in which John Moritz dismisses his appeal against all parties. In

paragraph 3 the Southwest Bank agrees not to file a cross-appeal against Moritz and declares the judgment of the District Court a final adjudication of the rights to the proceeds between those two parties. Clearly, the only remaining question, then, is that of the trustee's and bank's conflicting claims to the proceeds of the fixtures.''

We accept the trustee's interpretation. The apparent purpose of the stipulation was to substitute the proceeds of the fixtures sale for the fixtures in the contest between the trustee and the bank. In the District Court the parties stipulated for a consolidation because the trustee's claim as an intervenor in the action against Moritz and its claim to the inventory both depended upon the sufficiency of the financing statement. The parties by agreement have made one lawsuit out of two and the bank will not now be allowed to contend otherwise. This disposes of the bank's other contention that, because the trustee filed only one notice of appeal, only the suit involving the inventory is before this court.

Sufficiency of the Financing Statement

With exceptions not applicable here, a financing statement must be filed to perfect all security interests. § 9-302, U. C. C. An unperfected security interest is subordinate to, among others, a "lien creditor," which term includes "a trustee in bankruptcy from the date of the filing of the petition." § 9-301 (3), U. C. C.

The requisites of a sufficient financing statement are prescribed by section 9-402, U. C. C. Insofar as pertinent, we quote that section: "(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. . . . A copy of the security agreement is

sufficient as a financing statement if it contains the above information and is signed by both parties. . . . (5) A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.''

Section 9-403(4), U. C. C., provides: ''A filing officer shall mark each statement with a consecutive file number and with the date and hour of filing and shall hold the statement for public inspection. In addition the filing officer shall index the statements according to the name of the debtor and shall note in the index the file number and the address of the debtor given in the statement.''

Section 9-105(1)(d), U. C. C., defines debtor as ''the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts, contract rights or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of the article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.''

It is undisputed that Verlan J. Rumbaugh was the owner of the collateral covered by the security agreement. Section 9-105(1)(d), U. C. C., provides that in any provision of the article dealing with collateral, ''debtor'' means the owner of the collateral. One of the requirements for a sufficient financing statement is that it be signed by the debtor. § 9-402 (1), U. C. C. The few cases which have considered the necessity of signature of the debtor have not held the omission of the signature is a minor error. In re Industro Transistor Corp., 14 U. C. C. Rep. 522 (Bankruptcy Court, E.D.N.Y.); Beneficial Finance Co. v. Kurland Cadillac-Olds., 57 Misc. 2d 806, 293 N. Y. S. 2d 647; Provident Finance Co. v. Beneficial

Finance Co., 36 N. C. App. 401, 245 S. E. 2d 510; In re Murray, 2 U. C. C. Rep. 667 (Bankruptcy Court, D. Ore.). See, also, White & Summers, Uniform Commercial Code, p. 835.

It is not for this court to write the signing requirement of the code out of the statute. We hold the filing of a financing statement which is not signed by the owner of the collateral described therein is insufficient to perfect the security interest. In the light of this holding, it is unnecessary for us to consider or rule upon the trustee's other criticisms of the financing statement.

Transfer of the Property to the Corporation

If the property covered by the security agreement never became the property of R & S Hardware, Inc., the bankrupt, then, of course, the trustee has no claim thereon even if the security interest was not perfected. Again, there is no dispute on the material facts. The question is, did Rumbaugh sell the assets of the sole proprietorship to the corporation?

The applicable provisions of the Uniform Commercial Code are the following: Section 2-106, U. C. C., provides in part: " 'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time. A 'sale' consists in the passing of title from the seller to the buyer for a price (section 2-401). A 'present sale' means a sale which is accomplished by the making of the contract." Section 2-207(3), U. C. C., provides: "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act." Section 2-204(1), U. C. C., provides: "A contract for sale of goods may be made in any man-

ner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Most important in this case is section 2-401(3), U. C. C., which says in part: "Unless otherwise explicitly agreed where delivery is to be made without moving the goods, . . . (b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."

The essential facts are that Rumbaugh and the corporation did contract, as evidenced by the corporate minutes and his acceptance of the stock certificate. At that time the goods were identified and they consisted of the fixtures and inventory then located in the store at 2918 South 84th Street in Omaha, Nebraska. No physical delivery needed to be made. Rumbaugh testified he intended the corporation become the owner of that property. The evidence is not contradicted. The contract did not contemplate the delivery of any document of title. Title passed under the provisions of section 2-401(3)(b), U. C. C., at the time of contracting. The after the fact recital, in the schedule attached to the petition in bankruptcy that the fixtures and inventory had not been transferred to the corporation, cannot change what had occurred before.

### The Corporate Entity

The finding of the trial court that R & S Hardware, Inc., never had corporate existence seems to be a reverse use of the equitable principle of disregard of the corporate entity. Appellee argues it is simply a finding of fact by the trial court and must be treated as such. The evidence does not support such a fact finding. We have been cited no authority which holds the continued use of a trade name by a corporation, continued use of printed materials from pre-incorporation days, or the lending of money to the corporation by a shareholder operates to defeat

what, on its face, is a corporate existence without legal defect.

The ordinary use of the principle of disregard of the corporate entity is in those cases where the corporate existence is used to cloak fraud or justify wrongdoing. Its use is against corporate owners who commit fraud. Ridenour v. Kuker, 185 Neb. 321, 175 N. W. 2d 287; 18 C. J. S., Corporations, § 6, p. 378; § 582 et seq., p. 1308. We find no cases where the principle of disregard of the corporate entity has been used to prefer one class of creditors to another. We do not see how the principle may be applied to prefer a creditor who fails to perfect a security interest to the representatives of other creditors of the corporation. The situation here is not unlike that in State ex rel. Sorensen v. Weston Bank, 125 Neb. 612, 251 N. W. 164, where the sole corporate stockholder sought to offset the corporate deposit in the defunct bank against the receiver's claim against him on his personal note. We held there it could not be done.

In this case, had the bank met the simple statutory requirements to properly perfect its security interest it would not be in the position in which it finds itself, for the trustee in bankruptcy would have taken the property subject to that security interest.

REVERSED AND REMANDED.