In re Philo Pierre BIANE, d/b/a Cucamonga Vineyard Company, Philo Biane, Jr., and Carolyn Biane, Debtor.

Philo Pierre BIANE and Carolyn Biane, Debtors-in-Possession, Appellant,

v.

UNITED CALIFORNIA BANK, a California Banking Association, Appellee.

BAP No. CC-80-1043-HVG.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Submitted Feb. 19, 1981.

Decided March 5, 1982.

---

Kenneth N. Klee, Stutman, Treister & Glatt, Professional Corp., Los Angeles, Cal., for appellant.

Thomas A. Pashalides, Los Angeles, Cal., for appellee.

Before HUGHES, VOLINN and GEORGE, Bankruptcy Judges.

GEORGE, Bankruptcy Judge.

On August 21, 1980, the above-named debtors-in-possession instituted an adversary proceeding to avoid an alleged security interest which was held by United California Bank in certain community property pertaining to the debtors' winery business. They contend that the security agreement and financing statement are invalid as to Mrs. Biane's creditors because these instruments were executed solely by Mr. Biane, without naming his wife. The trial court dismissed this complaint. We affirm.

## I. BACKGROUND

The appellants, Philo Pierre Biane and Carolyn Biane, own, as community property, a winery business known as Cucamonga Vineyard Company. Pursuant to the operation of this business, Mrs. Biane has, on occasion, signed checks, executed security agreements and equipment leases, and guaranteed obligations. Nevertheless, Mr. Biane substantially and for the most part managed the daily activities of the winery, without significant participation by Mrs. Biane.

On July 18, 1978, Philo Biane entered into a security agreement with the appellee, United California Bank ["UCB"], covering present and future accounts, accounts receivable, inventory proceeds, general intangibles, and all of the wine inventory of the Cucamonga Vineyard Company. Mrs. Biane was not named in, nor did she sign, this agreement. Thus, the financing statement, subsequently filed by UCB, contained only the names of Philo Biane and the Cucamonga Vineyard Company. During the period between July 18, 1978 and September 18, 1979, UCB loaned "Philo Biane dba Cucamonga Vineyard Company" some $2,159,765.12 under this security agreement. These loans were documented by twenty-three (23) promissory notes, signed by Mr. Biane.

Following the commencement of a civil action in state court to enforce the above

obligations, the Bianes jointly entered into the present case under Chapter 11 of the Bankruptcy Code. They pursue the instant proceeding as debtors-in-possession of their estate.

## II. ANALYSIS OF THE FACTS AND THE LAW

The primary issue in this appeal deals with the rights which Mrs. Biane holds as debtor-in-possession. In this position, Mrs. Biane possesses the same powers as does a Chapter 11 trustee. 11 U.S.C. § 1107(a) (1978). Thus, to the extent that UCB's security interest may have been unperfected as to her creditors on the date of the filing of her Chapter 11 petition, Mrs. Biane may avoid that interest. 11 U.S.C. § 544(a); Cal.Comm.Code § 9301(1)(b) & (3).

Perfection, under California law, requires the filing of a financing statement which "gives the names of the debtor and the secured party [and] is signed by the debtor ...." Cal.Comm.Code § 9402(1). The term "debtor" includes "the owner of the collateral." Cal.Comm.Code 9105(1)(d). Since Mrs. Biane owns a community property interest in the collateral held under the Philo Biane-UCB security agreement, see Cal.Civ.Code § 5105, she argues that her name should have been included, as a debtor, on the U.C.C. financing statement which was filed pursuant to that agreement. Otherwise, she maintains, her judgment lien creditors could have obtained rights which were superior to this security interest in the subject collateral.

These arguments ignore the unique nature of the marital community in community property states. Under California law, for example, "[t]he property of the community is liable for the contracts of either spouse which are made after marriage," Cal.Civ.Code § 5116, and "either spouse has the management and control of the community property ... with like absolute power of disposition ... as the spouse has of the separate estate of the spouse." Cal.Civ. Code § 5125(a). Neither UCB nor Mrs. Biane has questioned the proposition that these provisions permit either spouse of a marital community to grant a security interest in the personal property of that community, without the consent of the other spouse. Hence, UCB maintains that it would be incongruous to require the inclusion of the name of a spouse on a financing statement which was filed pursuant to a security agreement in which that spouse did not participate.

Mrs. Biane, however, argues that although Mr. Biane may have granted a valid security interest in their personal community assets without her permission, UCB should not be permitted to perfect that security interest without giving notice to her creditors by including her name in its financing statement. Instead, she asserts, her creditors should have been able to discover the existence of this security agreement through a file search of only her name.

The Uniform Commercial Code should be interpreted in a manner consistent with other bodies of state law, if possible, including a state's community property laws. Certainly, one of the primary purposes behind the filing requirements of Article 9 of the U.C.C. is to give notice to subsequent creditors of the existence of a superior security interest in a debtor's personal property. We are of the view that creditors and potential creditors of married persons living in community property states are under constructive notice that the spouses of those married persons have the power to and may commit community assets, particularly in business operations, to security agreements. Absent a statutory mandate, we see no reason to require a lender to provide additional notice to the creditors of a spouse who has played no active part in the lender's security agreement. Moreover, the imposition of such a requirement could result in an unwarranted impediment to and confusion in commercial transactions.

The cases which were cited by Mrs. Biane in support of her position on this point are not pertinent, nor are they persuasive in the present context. *K. N. C. Wholesale, Inc. v.*

*AWMCO, INC.*, 56 Cal.App.3d 315, 128 Cal. Rptr. 345 (1976), *Southwestern Bank of Omaha v. Moritz*, 203 Neb. 45, 277 N.W.2d 430, 26 U.C.C.Rep.Serv. 231 (1979), *White Star Distributors, Inc. v. Kennedy*, 61 A.D.2d 1011, 411 N.Y.S.2d 751, 25 U.C.C. Rep.Serv. 1446 (1978), and *General Motors Acceptance Corp. v. Washington Trust Co. of Westerly*, 386 A.2d 1096, 24 U.C.C.Rep. Serv. 211 (R.I.1978) all involve the listing of non-owner parties in financing statements, without the name of the actual owner of the collateral. Subsequent creditors of the real owner of the secured property had no notice, constructive or otherwise, of the existence of the prior security interest.

*G.F.C. Credit Corporation of Alabama v. Bancroft*, 2 B.C.D. 524 (S.D.Ala.1976) involved the ownership of personal property by a husband and wife, as tenants in common. Both signed a security agreement dealing with this personalty, but the wife's name was not included in the financing statement. To the extent of the wife's undivided one-half interest in the collateral, the security interest which was granted by her was held to be unperfected. It goes without saying that community property is unlike property held in common. In *Bancroft*, the wife's interest was totally distinct from the husband's and it required her full participation, including the filing of a financing statement in her name, with respect to her interest. This requirement is absent in the instant case.

We conclude that Mr. Biane's name and signature were all that was needed to perfect the security interest of UCB as to all creditors, hypothetical or real, who could have lain claim to this personalty of the Biane community. Therefore, we affirm the decision of the trial court.

HUGHES, Bankruptcy Judge, dissenting:

My reading of the California Commercial Code as construed by California courts leads me to conclude that omission of Mrs. Biane's name from the financing statement prevented the bank's security interest in her property from becoming perfected. Accordingly, the bank's security interest should be subordinated to the rights of her trustee in bankruptcy, which rights she holds as debtor-in-possession.

I

The only question presented by this appeal is whether the bank's security interest is perfected. If Carolyn's ownership were not affected by community property law, e.g., were she an unmarried co-tenant, the authorities would compel us to hold the financing statement invalid as to Carolyn's creditors.

The leading case construing the relevant sections of California's Commercial Code is *K. N. C. Wholesale, Inc. v. AWMCO, Inc.*, 56 Cal.App.3d 315, 128 Cal.Rptr. 345 (1976), which held a financing statement that listed the non-owner parent corporation but not the owner subsidiary corporation to be deficient. After reciting Cal.Comm.Code § 9105(1)(d), the court stated:

The purpose of the filing requirements for perfection of security interest is to guarantee that third parties will have notice of existing security interests in collateral, thus protecting credit transactions. (See § 9402, Un.Com.Code comment 2, 3). In cases where the "debtor" is not the owner but has only obtained his rights in the collateral due to the owner's permission, a financing statement in the name of the "debtor" alone fails to give subsequent creditors of the owner any notice that the collateral is subject to a prior security interest. To avoid such potential fraud or misrepresentation, the term "debtor" as used in section 9402 must be taken as referring to both the actual debtor and the owner of the collateral, i.e., both names are required on the financing statement to perfect the security interest. (Emphasis in original).

This construction has been applied to joint-ownership cases. See, for example, *G. F. C. Credit Corporation of Alabama v. Bancroft*, 2 B.C.D. 524 (S.D.Ala.1976), where failure to give the names of both co-tenants rendered the financing statement invalid as to creditors of the omitted co-tenant.

The majority distinguishes these and other cases on the grounds that they do not involve community property ownership. It then states three reasons why this should make a difference:

1. "[C]reditors and potential creditors of married persons living in community property states are under constructive notice that the spouses of those married persons have the power to and may commit community assets ... to security agreements."

2. "Absent a statutory mandate, we see no reason to provide additional notice..."

3. "[S]uch a requirement could result in an unwarranted impediment to and confusion of commercial transactions."

Each of these premises will be considered.

## II

The first premise should not be read literally. An unperfected security interest is subordinate to a subsequent, perfected security interest even if the latter creditor had actual knowledge of the prior security interest. *In re Smith*, 326 F.Supp. 1311 (D.Minn.1971). Even a lien claimants' priority over unperfected security interests is not conditioned on lack of knowledge of either the power to encumber or the fact of a prior encumbrance. Cal.Comm.Code § 9301(1)(b), (3).

Instead, I understand the majority to say that because Carolyn's creditors had constructive notice of Pierre's power to encumber her property, and because they could protect themselves by running a financing statement check under Pierre's name, perfection as to those creditors is excused. This assumes, however, that Carolyn's creditors know her marital status and her spouse's name, which places a burden of inquiry on them that is not contemplated by the Commercial Code. On the other hand, the bank has to obtain this same knowledge if, as appellants insist, it is required to mention her name in the financing statement.

The question, it seems to me, comes down to who should bear the burden of inquiry. In a related context, this circuit has stated that "[t]he secured party, not the debtor or uninvolved third parties, has the duty of insuring proper filing and indexing of the notice." *In re Thomas*, 466 F.2d 51, 53 (9th Cir. 1972). The majority justifies shifting that burden from the bank to uninvolved third parties with its second and third premises.

The second, absence of statutory mandate for additional notice, would seem to beg the question of whether the present statute requires the bank to give Carolyn's name. We construe the statute to determine its mandate.

As an abstract matter, the third premise is plausible: commerce might well be impeded by requiring lenders (such as the bank) to learn the marital status of their borrowers and to place the spouses' names on financing statements. The majority does not eliminate the burden of inquiry, however; it merely shifts that burden from one class of creditors to another, both of whom are engaged in commercial transactions.

Furthermore, the record is to the contrary. The bank obtained Carolyn's signature on other commercial documents, including a guarantee of the debt underlying this controversy. There is no suggestion that learning the information needed to mention Carolyn in the financing statement impeded this transaction.

The bank also points to the requirement in Cal.Comm.Code § 9402(1) that a financing statement be signed by the debtor-owner. Assuming *arguendo* that requiring Mrs. Biane's signature would be burdensome, it does not appear that it is required. The financing statement need "either ... be signed by the debtor or ... contain the debtor's name." *K. N. C. Wholesale, Inc. v. AWMCO, Inc.*, supra. The court concluded: "The financing statement ... does not contain any reference to AWMCO, the owner of the collateral, and is therefore defective."

## III

I would hold that, as to Mrs. Biane's community property interest in the collater-

al, the financing statement is defective because it does not contain any reference to her. This is the mandate of Cal.Comm. Code §§ 9402(1) and 9105(1)(d).