In the Matter of Wayne Allen BERG-
SIEKER and Janet Rosina
Bergsieker, Debtors.

Daniel J. FLANIGAN, trustee in
bankruptcy, Plaintiff,

v.

AMERICAN BANK OF HIGGINSVILLE,
Defendant.

Bankruptcy No. 82–02748–3.
Adv. No. 83–0387–3.

United States Bankruptcy Court,
W.D. Missouri, W.D.

June 17, 1983.
As Amended Aug. 16, 1983.

William R. Jackson III, Kansas City, Mo., for plaintiff.

John E. Frerking, Higginsville, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINT FOR RELIEF

DENNIS J. STEWART, Bankruptcy Judge.

This is an action in which the plaintiff trustee in bankruptcy seeks to compel the turnover of certain property on the ground that the defendant does not have a perfected security interest in the same. It is asserted in the complaint that this property—consisting of the debtor's machinery, including after-acquired property of the same type and proceeds from its sale—was sold by the defendant and that the defendant received proceeds in the amount of $12,-505.62. Accordingly, the trustee requests the turnover of those proceeds to him, plus legal interest.

In its answer to the complaint, the defendant admits that it holds the sum of $12,500.00 as proceeds of the sale adverted to in the complaint, but contends that "it was properly perfected in regard to said security property by the execution of a security agreement by debtors covering said property and by the filing of a financing statement with the Recorder of Deeds in the County of debtors' residence executed by a debtor." The defendant accordingly requested that the action be dismissed. Accordingly, in consonance with Rules 12 and 56 of the Federal Rules of Civil Procedure, this court interpreted the motion to dismiss as one for summary judgment and entered its order on April 18, 1983, directing the parties to submit the documents relating to the issue of perfection on which the crucial material issue might be decided. As is material to the decision in this case, the documents which have been submitted to the court show that the defendant purported to perfect a security interest in the following described collateral by filing a financing statement on May 9, 1979, with the recorder of Lafayette County, Missouri:

"All of debtor's machinery now owned or hereafter acquired, including all increases, replacements, substitutions and addi-

tions thereto, and all proceeds from the sale of such property."

In the space provided for the signatures of the debtors, only the signature of Wayne Bergsieker appears. Accordingly, the plaintiff contends that:

"Under Mo.Ann.Stat. Section 400.9–401 (Vernon 1965), the financing statement must be signed by both the debtor and creditor. It is imperative for the debtor to sign the financing statement. In fact, several courts cite the authorities, White and Summers, as stating that there are no cases in which a court has upheld the validity of a financing statement without the signature of the debtor. *Providence Finance Co. v. Beneficial Finance,* 36 N.C. App. 401, 245 S.E.2d 510 (1978); *Matter of Maple Contractors, Inc.* [172 N.J.Super. 348], 411 A.2d 1186 (N.J.1979); *Matter of Pischke,* 11 B.R. 913 (E.D.Va.1981).

"Because this signature is so crucial, the majority rule is that the omission of the debtor's signature is not a minor, allowable error. Therefore, if the financing statement is not signed by the owner of the collateral, it is insufficient to perfect the security interest. *Southwest Bank of Omaha v. Moritz,* 203 Neb. 45, 277 N.W.2d 430, 26 U.C.C.Rep. 231 (Neb. 1979).

"In this matter, both spouses signed the security agreement regarding collateral in livestock, machinery and equipment. However, the financing statement referring to the same collateral was signed only by the husband. As case law and statutes clearly indicate, the signature of only one spouse on a financing statement is insufficient to perfect the interest. Therefore, without a perfected security interest, the trustee takes a priority position."

The defendant, in its written "rebuttal of plaintiff's affidavit," does not deny that the debtors both signed the security agreement and that only Wayne Allen Bergsieker signed the financing statement. But they contend that, in the absence of any Missouri decisions holding the security interest in

such an instance to be unperfected, the court must regard it as perfected.

The literal and clear provision of the governing statute, section 400.9–402(1) RSMo, is to the effect that a financing statement is "sufficient" only if it contains the signature of "the debtor." The question which is presented by this case is whether the signature of one of two debtors is sufficient to perfect the claimed security interest. The decisions relied upon by the trustee indicate that the signature may be sufficient if the signing party is the owner of the collateral. See *Southwest Bank of Omaha v. Moritz, supra,* 203 Neb. 45, 277 N.W.2d 430, 26 U.C.C.Rep. at 236, to the effect that "Section 9–105(1)(d), UCC, provides that in any provision of the article dealing with collateral, 'debtor' means the owner of the collateral." These considerations appeared to create an issue of fact, in view of the defendant's contention that "the property described in the security agreement was owned by Wayne A. Bergsieker and ... the signature of Janet R. Bergsieker was solely for releasing any marital interest therein." It appeared to be also an issue of fact, if the property were owned jointly, whether Janet R. Bergsieker may have expressly or by implication or conduct appointed Wayne Bergsieker as her agent for the purpose of signing the security agreement.

Because of the existence of these factual issues, the court entered its order on May 26, 1983, setting a hearing for June 6, 1983. Thereupon, the plaintiff appeared by William R. Jackson III, Esquire, his counsel, and the defendant also appeared by counsel, John E. Frerking, Esquire. The plaintiff sought to adduce testimony through the debtor Wayne Allen Bergsieker to demonstrate the co-ownership of the property in question by the debtor and his wife. After Mr. Bergsieker was called to the stand by plaintiff's counsel, he explicitly and conclusionarily testified, in response to that counsel's questions, that the property in question was jointly owned by him and his wife. But, when counsel for the defendant sought to cross-examine him on the same issue, he refused to answer any and all questions on the same issue or any other issue, stating that his counsel, who was not present for the hearing, had instructed him to assert his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. Otherwise, both plaintiff and defendant declined the explicit opportunity granted them by the court to present evidence.

 It is well settled that a witness, in invoking the Fifth Amendment privilege against self-incrimination, cannot be permitted to "select any stopping place in the testimony." *Rogers v. United States,* 340 U.S. 367, 371, 71 S.Ct. 438, 441, 95 L.Ed. 344 (1951). It is further held to be proper, when the witness inconsistently and improperly invokes the Fifth Amendment on cross-examination as to the same subjects on which he has testified on direct examination, that his entire testimony should be stricken and disregarded. "If ... the witness—by invoking the privilege—precludes inquiry into the details of his direct testimony so that there is a substantial danger of prejudice, the direct testimony should be stricken in whole or in part." *United States v. Brierly,* 501 F.2d 1024, 1027 (8th Cir.1974). In the case at bar, by refusing to answer any and all further questions as to his ownership of the property, the witness created a "substantial danger of prejudice by depriving (the adversary) of the ability to test the truth of the witness's direct testimony." *United States v. Diecidue,* 603 F.2d 535, 552 (5th Cir.1979). Therefore, under the circumstances of this action, the entire testimony of the lone witness should be stricken and disregarded.

 Thus, with no cognizable evidence having been offered in this action after a full and fair opportunity to be heard, the judgment must be rendered against that party which has the burden of proof. Generally, when the trustee brings an action seeking to exercise his powers under the strongarm clause to avoid a purported security interest, he bears the burden of demonstrating the invalidity or imperfection of that security interest. See, e.g., *Matthews v. James Talcott, Inc.,* 345 F.2d 374, 380 (7th

**760**

Cir.1965). This is especially so in a case such as that at bar, in which the security interest appears valid and perfected on its face and extrinsic evidence is necessary to show otherwise. For it cannot be said that the fact that both debtors signed the security agreement and only Mr. Bergsieker signed the financing statement points to any irregularity in the absence of cognizable proof that the debtors were joint owners of the collateral. As noted above, the law requires only that the owner of the collateral subscribe the financing statement. Accordingly, in the absence of proof to the contrary, the court must hold the defendant's security interest, regular on its face, to be valid and perfected and, accordingly, that the plaintiff's complaint for relief should be denied.

It is therefore

ADJUDGED that the plaintiff's complaint for relief be, and it is hereby, denied.