BRIGHT, Circuit Judge.
Marvin and Betty Davison, husband and wife and petitioners for relief under chapter 11 of the Bankruptcy Reform Act, sought a determination in the bankruptcy court that Citizens State Bank of Nevada, Missouri (Bank) was an unsecured creditor. After an evidentiary hearing, the bankruptcy court determined that the Bank had failed to perfect its security interest because Betty Davison did not sign the financing statement covering the collateral. The district court affirmed. For the reasons set forth in this opinion, we reverse and remand for further proceedings.
I. Background.
Davison Enterprises is an unincorporated business consisting of fifty-four retail stores in Missouri, Kansas, Arkansas, and Illinois. The stores, operating under the name of Davison Shoes, deal primarily, though not exclusively, in footwear. Since the early 1960s the Bank has provided Marvin and Betty Davison with financing for the operation of Davison Enterprises. The Bank conducted its business primarily with Marvin, although Betty also signed various instruments obligating payment to the Bank.
Presently the Davisons are indebted to the Bank on four promissory notes amounting to $675,000, which they both executed *933 between January 1982 and January 1988.[1] To secure the debt, the Bank obtained a security interest in the footwear inventory in the shoe stores located in Missouri. Both Marvin and Betty Davison signed the promissory notes and the security agreements supporting those notes, but only Marvin signed the financing statement covering the inventory.
On March 16, 1983, the Davisons filed a voluntary joint petition for relief under chapter 11 of the Bankruptcy Reform Act. Shortly after filing, they challenged the perfection of the Bank’s security interest and sought a determination from the bankruptcy court that the Bank was an unsecured creditor. According to the bankruptcy court, a determination that the Bank’s interest was unperfected would enable the Davisons to use the inventory to obtain additional financing. After conducting an evidentiary hearing, the bankruptcy court held that the Bank’s security interest was unperfected because Betty Davison failed to sign the financing statement. The Bank appealed to the district court.
The district court affirmed, holding that as an owner of the inventory, Betty Davison was a debtor whose signature was required for the Bank’s security interest to be perfected. The court also denied the Bank secured status as to Marvin’s ownership interest in the inventory because, as tenants by the entirety, Marvin and Betty Davison hold indistinguishable and indivisible interests in their property. In addition, the court rejected the Bank’s argument that Marvin acted as Betty’s agent when he signed the financing statement.
II. Discussion.
The principal issue in this case is whether the omission of Betty Davison's signature on the financing statement is fatal to the Bank’s status as a secured creditor. The Uniform Commercial Code, which has been enacted in Missouri and is applicable to this transaction, requires that the financing statement be signed by the “debtor” to be effective. See Mo.Ann.Stat. § 400.9-402(1) (Vernon 1978).[2] The validity of the Bank’s security interest therefore turns on whether Betty Davison is a debtor within the meaning of the Code.
Generally, the debtor is the person who “owes payment or other performance of the obligation secured, whether or not he owns rights in the collateral.” Mo.Ann. Stat. § 400.9-105(l)(d) (Vernon 1965). When the person owing the debt does not own the collateral securing that debt, however, the term “debtor” varies with the context in which it is used. Section 400.9-105(l)(d) provides:
Where the debtor and the owner of the collateral are not the same person, the term “debtor” means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires[.][3]
Under the statute, therefore, the term “debtor” may mean, as the context requires, the obligor, the owner of the collateral, or both. See 4 R. Anderson, Uniform Commercial Code § 9-402:20, at 486 (2d ed. 1971).
The parties disagree on the meaning of the term “debtor” as it applies to the requirement under section 400.9-402(1) that the debtor sign the financing statement. The Bank contends that when, as in this case, the obligor does not own the collater *934 al securing the debt, the term “debtor” means, for purposes of signing the financing statement, the owner of the collateral. The Davisons, on the other hand, maintain that any person who “owes payment or other performance of the obligation secured,” regardless whether he owns rights in the collateral, is a debtor whose signature is required on the financing statement. Thus, the Davisons contend that Betty is a debtor because she is obligated on the four promissory notes, and the Bank argues that she is not a debtor unless she is found to own the inventory securing the debt.
We think that for purposes of signing the financing statement, the term “debtor” means the owner of the collateral. See In re Bergsieker, 30 B.R. 757, 759 (Bankr.W.D.Mo.1983). The statute defining a “debtor” provides that “[w]here the debtor and the owner of the collateral are not the same person, the term ‘debtor’ means the owner of the collateral in any provision of the Article dealing with the collateral,” unless the context otherwise requires. Mo.Ann.Stat. § 400.9-105(l)(d) (Vernons 1965) (emphasis added). Because the purpose of a financing statement is to alert potential creditors that a prior security interest already encumbers the collateral, the section requiring the debtor’s signature on the financing statement, section 400.9-402(1), is clearly a “provision of the Article dealing with the collateral.”[4] The term “debtor” as used in that provision therefore means the owner of the collateral.
Although the provision defining the term “debtor” also provides that the obligor may be a debtor “where the context so requires,” see Mo.Ann.Stat. § 400.9-105(l)(d) (Vernons 1965), the context here does not require an obligor who does not own the collateral to sign the financing statement. As noted, the purpose of a financing statement is to give notice of a prior interest against collateral. Because potential creditors need not be concerned with the identity of an obligor who does not own the collateral, the purpose of the signing requirement is in no way advanced by requiring the obligor’s signature on the financing statement. Thus, we conclude that unless Betty Davison had an ownership interest in the inventory, she was not a debtor whose signature was required on the financing statement for the Bank to perfect its interest.
At the March 29, 1983, evidentiary hearing before the bankruptcy court, the Davisons introduced evidence to show that Betty had an ownership interest in the inventory. That evidence showed that Betty signed each of the promissory notes for which the inventory served as collateral. She also signed and was listed as a “debt- or” on the security agreements accompanying those notes. As the bankruptcy court pointed out, the security agreements state that the “debtor” is the owner of the collateral. The Davisons also introduced evidence that they were both listed as signatories on all bank accounts maintained for personal and business use. In addition, the Davisons’ bankruptcy schedules indicate that they both own the real property on which most of the Missouri shoe stores are located. Finally, Vernon Baker, the Davisons’ financial consultant, testified that Davison Enterprises is a proprietorship with only Marvin and Betty holding equity positions.
The Bank, on the other hand, introduced evidence that Marvin was the sole owner of Davison Enterprises and, therefore, of the footwear inventory. Chester Miller, a Bank executive responsible for the Davisons’ loans, testified that he conducted business with Marvin, and that Betty did *935 not participate actively in the business. Mr. Miller further testified that Betty signed the necessary notes and security agreements in her capacity as Marvin’s wife.[5] In addition, Mr. Baker, the Davisons’ financial consultant, testified that Marvin was the “controlling feature” of the business and that Betty and other family members only helped out around the business when they were needed.
After conducting this evidentiary hearing, the bankruptcy court concluded that Betty Davison was required to sign the financing statement because she and Marvin both owned the inventory. In so concluding, however, the court did not rely on the evidence presented at the hearing. Instead, the court applied the presumption under Missouri law that married persons hold jointly-owned personal property as tenants by the entirety. See Merrill Lynch, Pierce, Fenner and Smith v. Schackelford, 591 S.W.2d 210, 213 (Mo.App.1979). Under this doctrine, tenants by the entirety are presumed, absent evidence to the contrary, to have an indistinguishable and indivisible interest in all property owned by the entirety. See Coffey v. Coffey, 485 S.W.2d 167, 170 (Mo.App.1972). Having determined that a tenancy by the entirety existed under a presumption according to Missouri law, and further that the Bank had not rebutted the presumption, the bankruptcy court concluded that Betty Davison owned the inventory and was therefore required to sign the financing statement for the Bank’s security interest to be perfected.
The bankruptcy court’s holding misconstrues the presumption of tenancy by the entireties. Before property can be held in a tenancy by the entirety, “two persons who are husband and wife must be joint owners” of the property. See Merrill Lynch, Pierce, Fenner and Smith v. Schackelford, supra, 591 S.W.2d at 213. Whether Betty was a “joint owner” of the inventory was the precise issue for the bankruptcy court to determine on the basis of the evidence presented at the evidentiary hearing. In concluding that Betty had an ownership interest in the inventory, however, the bankruptcy court did not rely on this evidence; instead, it simply presumed that the Davisons held the inventory as tenants in the entirety. Because property of the entirety must be owned by both spouses, the bankruptcy court erred in concluding that Betty held the inventory as a tenant in the entirety without first determining whether she had an ownership interest in that inventory.
On appeal, the district court affirmed the bankruptcy court’s decision on the basis that the bankruptcy court was not clearly erroneous in finding that Betty owned the collateral. The district court stated:
As the bankruptcy court pointed out, both Marvin and Betty Davison signed the four promissory notes. Both also signed the security agreements accompanying those notes. Each security agreement stated that the signed debtors owned the property. Furthermore, both Marvin and Betty Davison are listed as signatories on all bank accounts maintained for both personal and business use. Given these facts, the bankruptcy court found that Betty Davison was an owner of the footwear inventory. Given the significant basis for the bankruptcy court’s finding this Court cannot say that the finding was clearly erroneous.
As noted, however, the bankruptcy court never made such a factual determination, ruling instead that Betty was presumed to own the inventory as a tenant in the entirety with Marvin. Thus, this case is before us without a finding whether Betty held an actual ownership interest in the inventory, upon which the presumption of tenancy by the entirety might apply to determine the nature of her interest.
*936 Accordingly, we reverse the district court’s decision holding that Betty Davison’s signature was required on the financing statement, and direct the district court to remand the case for the bankruptcy court to determine, on the basis of all the evidence, whether Betty held an ownership interest in the inventory. If the court determines that Betty has an ownership interest, she would then be presumed under Missouri law to hold the property as a tenant by the entirety, and her signature would be required on the financing statement to perfect the Bank’s security interest.
On remand, the Davisons bear the burden of proving Betty’s actual ownership interest in the inventory. This placing of the burden comports with the general rule that a trustee in bankruptcy seeking to avoid a purported security interest bears the burden of proving the imperfection or invalidity of that interest. See Matthews v. James Talcott, Inc., 345 F.2d 374, 380 (7th Cir.), cert. denied, 382 U.S. 837, 86 S.Ct. 84, 15 L.Ed.2d 79 (1965); In re Bergsieker, 30 B.R. 757, 759 (Bankr.W.D.Mo.1983). As the United States Bankruptcy Court for the Western District of Missouri recently said:
[I]n the absence of proof that the * * * debtor [signing the financing statement] was not the sole owner of the property constituting the collateral * * *, a single debtor’s signature is sufficient to perfect the security interest. “This is especially so in a case * * * in which the security interest appears valid and perfected on its face and extrinsic evidence is necessary to show otherwise.”
In re Maples, 33 B.R. 14, 16 (Bankr.W.D.Mo.1983) (citation omitted).
If the bankruptcy court finds on remand that Betty Davison had an ownership interest in the footwear inventory, it should also consider whether Marvin acted as her agent when he signed the financing statement. In the proceedings before the bankruptcy court and the district court, the Bank contended that even if. Betty held an ownership interest in Davison Enterprises and the footwear inventory, she authorized Marvin to act as her agent in all business affairs, including the signing of the financing statement. In rejecting this argument, the district court stated that the Davisons presented no evidence supporting a finding of agency, and that agency would not be inferred merely because of the existence of a marital relationship. See Dickey Co., v. Kanan, 537 S.W.2d 430, 434 (Mo.App.1976); Murphy v. Olds, 508 S.W.2d 249, 252-53 (Mo.App.1974); We note, however, that at the evidentiary hearing the Bank presented evidence that Betty left the management of the business to Marvin. Because such evidence arguably is probative of an agency relationship with respect to the business, the district court erred in holding that no evidence supported a finding of agency. Thus, if Betty Davison is found to be an owner of the inventory, the bankruptcy court should also determine on remand whether Marvin acted as Betty’s agent in signing the financing statement.
III. Conclusion.
Accordingly, for the reasons set forth in this opinion', we reverse the decision of the district court with directions to remand the case to the bankruptcy court for further proceedings consistent with this opinion.

. The Davisons executed a note on January 25, 1982, in the principal amount of $470,000; on October 7, 1982, for $65,000; on December 23, 1982 for $50,000, and on January 4, 1983, for $90,000.

. Section 400.9-402(1) provides that:
[a] financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. (Emphasis added)

. Distinguishing whether a person is a debtor along these lines may be academic in most cases as the obligor and the owner of the collateral are usually the same person. See Comment 2 to § 400.9~105(l)(d).

. Courts have held in other contexts that an obligor who does not own the collateral is a debtor under section 400.9-105(1)(d). For example, it appears well settled that guarantors, accommodation parties, and other obligors are debtors for purposes of receiving notice of a sale or other disposition of secured property. See, e.g., First National Bank v. Cillessen, 622 P.2d 598, 600 (Colo.App.1980); Clune Equipment Leasing Corp. v. Spangler, 615 S.W.2d 106, 108 (Mo.App.1981); Bank of Gering v. Glover, 192 Neb. 575, 223 N.W.2d 56, 58 (1974). These cases are distinguishable from the case at bar, however, because the statute providing that the "debtor” receive notice of a sale is not a provision "dealing with the collateral,” but rather a provision “dealing with the obligation.”

. As the Bank points out in its brief, obtaining Betty’s signature on these documents was good business practice even if she did not own the collateral. By signing the documents as Marvin Davison’s wife, Betty assumed personal liability on the notes .and waived whatever marital interests she would have in the inventory.