In the Matter of NATIONAL MARINE SALES AND LEASING, INC., Debtor.

Erlene W. KRIGEL, trustee in bankruptcy, Plaintiff,

v.

Dan J. DRAKE, Jake S. Drake, Lewis Dysart, Mary Burner, as Statutory Trustees for Drake Marine, Inc., and Dan J. Drake, individually, Defendants.

No. 86–02784–3.
Adv. No. 86–0402–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

June 22, 1987.

Motion for Costs Denied July 24, 1987.

As Amended Aug. 3, 1987.

Motion for Order Nunc Pro Tunc Denied Aug. 12, 1987.

Erlene W. Krigel, Krigel & Krigel, Kansas City, Mo., for plaintiff.

Gregory Williams, Sunrise Beach, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT FOR PLAINTIFF AND AGAINST THE DEFENDANT DAN DRAKE IN THE SUM OF $1,000 ACTUAL DAMAGES AND $1,500 PUNITIVE DAMAGES AND THAT DEFENDANTS TURN OVER TO PLAINTIFF ALL ARTICLES LISTED ON EXHIBIT 2a EXCEPT THOSE MARKED THEREON BY AN ASTERISK, AND A REINELL CRUISER

DENNIS J. STEWART, Chief Judge.

The trustee in bankruptcy has brought this adversary action for the purpose of (1) obtaining a turnover order for certain chattels belonging to the debtor but alleged to be in the custody of the defendants and (2) seeking compensatory damages for alleged violation of the automatic stay whereby the defendants, or some of them, forced the debtor from occupancy of premises leased from the defendants after the date of bankruptcy and with knowledge of the filing of bankruptcy.

The action first proceeded to trial on March 2, 1987, whereupon it was necessary for the court, after hearing an extended range of evidence, to adjourn the hearing for the purpose of taking the remainder of the evidence which the parties then stated that they proposed to adduce. Thereafter, after further review of the evidence which had been adduced in the initial hearing, this court on April 29, 1987, issued its order directing the plaintiff to show cause why the action should not be dismissed. In that order, the court made the following pertinent observations:

"The within adversary action came on before the bankruptcy court for hearing on its merits on March 2, 1987. The plaintiff then presented evidence in support of her claim for turnover of personal property and for damages for alleged violation of the automatic stay. In respect of the first claim for relief, plaintiff was able to adduce evidence of defendants' currently possessing only such personal property as the defendants expressed a willingness to turn over to the plaintiff. Under such circumstances, it

would appear that the plaintiff is not entitled to relief in the form of a turnover order.

"The initial portion of this case has been tried only at the price of some great consumption of time and effort for the parties and at an inconvenience to witnesses which some of them expressed at the conclusion of the initial hearing. Another hearing would threaten at least to double the expense of time, effort, and inconvenience which all concerned have experienced in the initial hearing.

"Therefore, before proceeding with another hearing, this court would seek some assurance that the claim brought before the court proceeds upon some sound legal basis. As observed above, with respect to the turnover action, the evidence and statements of the parties and their authorized representatives tends to show that the defendants are willing voluntarily to turn over all of the property requested by the plaintiff which is in the defendants' possession. A bankruptcy court cannot require more with respect to a turnover matter. Therefore, this aspect of the action now appears to be moot.

"With respect to the action for damages for alleged violation of the automatic stay, the evidence which has hitherto been adduced shows that the defendant Drake Marine was the lessor of premises of which the debtor was lessee; that the debtor was in arrears in its payments on the lease; that, because of this arrearage in payments, the defendant served a notice to vacate pursuant to the terms of the lease within 10 days; that, shortly before the 10–day period, the debtor filed this bankruptcy proceeding as a chapter 11 proceeding; that, shortly thereafter, the chief executive officer of the lessor, one Dan Drake, came to the premises of the leased property and demanded that the debtor's agents vacate the premises; that the debtor's agents all testified that they then informed Dan Drake that a bankruptcy chapter 11 proceeding had been filed and that the removal from the premises was therefore in violation of the automatic stay; that Dan Drake tes-tified that he did not know at the time of the filing of the chapter 11 proceedings' that the debtor's agent complied with the demands and vacated the premises; that the debtor thereafter took no action in the bankruptcy proceedings to accept the lease upon cure of the arrearages owned on it or otherwise to seek an order of the bankruptcy court to restore it to possession of the premises; and that, on the basis of this evidence, the plaintiff trustee in bankruptcy, as successor in interest to the debtor, seeks damages in the form of loss of profits, which are assumed to be the same as in the prior years of the debtor's operations.

"There is no showing, however, that the debtor could have made the arrearage payments which the bankruptcy court would have required as a condition of accepting the executory lease. Under such circumstances, the governing decisions hold that the inability of the plaintiff to meet a condition precedent to the defendants' contractual performance prevents recovery.

"Further, the courts have also held that the failure of a plaintiff timely to take the measures which would mitigate damages may prevent plaintiff from recovering such damages as may have been mitigated. It appears from the evidence that the debtor failed to take the measures which could have easily been taken and which would have resulted in its restoration to the premises. Accordingly, for the foregoing reasons, it is hereby

"ORDERED that the plaintiff show cause in writing within 20 day of this date why the within complaint should not be dismissed under Rule 7041 of the Rules of Bankruptcy Procedure."

In response to that order, the plaintiff stated as follows:

"The plaintiff believes that, based upon the evidence presented thus far, she has made a submissible case and should not be the subject of a direct[ed] verdict. The court cites Rule 41(2)(b), F.R.Civ.P. for its authority to dismiss these proceedings. The plaintiff respect-

fully believes that the defendants must first move for a dismissal before the court can consider dismissal as it appears to be inclined to do per the court order of April 29, 1987. The plaintiff respectfully states that she does not recall the defendant's attorney making an oral motion or submitting a written motion for direct verdict. . . . If the defendant is, in fact, willing to turnover said inventory, plaintiff asks the court to enter a judgment by consent whereby defendant is ordered to turnover all items listed on Exhibit A. . . . The plaintiff-trustee believes that the issue of whether the defendant Drake Marine, Inc. unlawfully evicted the debtor on July 3, 1986 and whether the eviction was an intentional and willful violation of the automatic stay are issues properly before the court. . . . The court in [*In re Lowry*, 25 B.R. 52 (E.D.Mo.1982)], held that the measure of damages would be limited to the time in which the debtors would have been reasonably required to vacate the premises."

Therefore, the court entered its order on May 21, 1987, setting the requested adjourned hearing for June 4, 1987, and making the following observation:

"The trustee, in response to the court's show cause order, points out that none of the defendants has moved for dismissal and demands to have an adjourned hearing of the merits hereof. The demand will be honored by the court. It is therefore, accordingly,

"ORDERED that the requested adjourned hearing be held on June 4, 1987, at 3:00 p.m. in Room 945, United States Courthouse, 811 Grand Avenue, Kansas City, Missouri."

The evidence which was adduced on June 4, 1987, warrants the finding of the following facts. It was on July 3, 1986, that the defendant Dan Drake commenced his efforts to force the debtor from the premises which were being leased from him. On that evening, he proceeded to the premises with the intention of compelling the debtor's officers and agents to quit the premises. There is no question that the debtor was in default in its payments under the lease, nor that the defendant Drake and his corporation, Drake Marine, Inc., had granted the debtor prior lawful notice to quit the premises, which had previously expired. But, in the meantime, while the time period of that notice was in the process of expiring, the debtor corporation on June 20, 1986, had filed its petition for chapter 11 bankruptcy, thus bringing the automatic stay into effect. Mr. Drake, nevertheless, proceeded, by "bluff" and by promising to do whatever was necessary to effect ejectment, to cause the employees of the debtor corporation to quit the premises.

As pointed out above, the debtor corporation, in the course of the chapter 11 proceedings, made no effort to restore the premises to itself, which might easily have been accomplished by means of legal action in the bankruptcy court. Therefore, according to the principles which have been adverted to above, the debtor's successor in interest, the trustee in bankruptcy, cannot recover damages for loss of use of the premises, except for that brief period of time during which delay in restoration of the premises which would naturally have taken place before action could have reasonably been taken by the bankruptcy court.[1] And, according to the evidence which was adduced in the adjourned hearing of June 4, 1987, the debtor corporation might have looked forward to gasoline sales, which, if they roughly compared to other like businesses in the locality [2], would

---

**1.** "Even though Defendant did not obtain a modification or termination of the 11 U.S.C. 362(a) stay, because of the circumstances here wherein Debtors did not, in their Chapter 13 plans, propose to cure their default, I do not believe Debtors are entitled to continuing damages beyond a time when they could reasonably be deemed to have been required to vacate the rented premises, either by an eviction order obtained in the State Court subsequent to a termination of the stays by this Court, or by an order from this Court." *In re Lowry*, 25 B.R. 52, 57 (Bkrtcy.E.D.Mo.1982). According to these principles, it is the period of unlawful deprivation of the premises which should be the subject of compensation.

**2.** In her posttrial brief, the plaintiff trustee in bankruptcy points out that "John Campbell testified that he expected to sell gas, service and

have approximated $1200 during the July 4 weekend. In assessing the evidence which was adduced to this effect[3], and evaluating its applicability to the debtor's business[4], the court hereby concludes that the appropriate measure of damages in this regard is the sum of $1,000.00.[5]

The principal defense of the defendant Dan Drake in respect of the charge of violation of the automatic stay is that he did not know, in the evening of July 3, 1986, that a title 11 petition had been filed by the debtor; that he knew nothing about the filing until a few days later when he reviewed the written notice from the court in the mail. But the officers and agents of the debtor corporation—including John Campbell, its president, and Wayne Moore and Kenneth Hodgins, employees—all testify that they told Mr. Drake during the course of his efforts to evict them that the bankruptcy petition had been filed. Mr. Campbell testified that he contacted Mr. Drake by telephone between 7 and 7:15 p.m. on the evening of July 3, 1987, and advised him of the filing of the bankruptcy petition and expressly advised him that to compel ejectment would constitute a violation of the automatic stay. Of this conversation, Mr. Drake testified that he did not recall whether it took place or not. But later in his testimony, Mr. Drake denied that anyone on the evening of July 3, 1986, or before that date advised him of the filing of the bankruptcy petition.

On this crucial issue of credibility, the court has determined to credit the testimony of the debtor's officers and employees, not only on the basis of the appearance and demeanor of the witnesses, but also because it seems wholly unlikely that the debtor's agents would not have mentioned the bankruptcy filing when they were faced with the attempts of Mr. Drake to eject them. But Mr. Drake's attitude was admittedly one of "bluff" and threat.[6] and he expressed a disdain for any legal technicalities which may have been involved in the situation. According to Mr. Campbell's testimony, when Mr. Campbell advised Mr. Drake of the existence of the automatic stay, Mr. Drake responded:

"I don't give a darn for any of that legal mumbo-jumbo. You're out. Why don't you crawl back under that rock that you came from."

These facts compel the court to find that the violation of the automatic stay was intentional and wilful.

With respect to the other issue tried by the court, that of turnover of chattels belonging to the debtor, the parties offered in evidence on June 4, 1987, exhibit 2A, as to which it was agreed between them that all chattels thereon belonged to the debtor except those marked by an asterisk. Further, with respect to a certain Reinell Cruiser, it was the unequivocal testimony of Kenneth Hodgins that it had been in the possession of the defendant Dan Drake after the date of bankruptcy and that it reviewed these as of the date of the hearing, June 4, 1987. Mr. Drake did not contradict Mr. Hodgins' testimony to this effect, but rather admitted that it had been on his property with his knowledge and consent after the date of bankruptcy and that he did not know where it was at the present time. His testimony to the effect that it would have a minimal sale value was not uncontradicted.[7]

### Conclusions of Law

Section 362(h) of the Bankruptcy Code provides as follows:

---

boating accessories. Wayne Moore even testified that he sold approximately 3,000 gallons of gasoline that weekend. He further testified that his profit was approximately 40¢/gallon or $1,200.00." The testimony respecting Wayne Moore's gasoline business was to the effect that it was approximately equal in scope and magnitude to that of the debtor entity.

3. See note 2, *supra.*

4. See note 2, *supra.*

5. As observed in note 2, *supra,* the measure can be only roughly comparable to the income lost by the debtor because only a rough comparability of the two places of businesses was established.

6. This is so according to Mr. Drake's testimony itself.

7. Because of the testimony that this watercraft is still in the possession of the defendant, the court will direct its turnover *in specie.*

"An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages."

This section is declarative of the preexisting law. See *In re Brooks*, 12 B.R. 283 (Bkrtcy.W.D.Mo.1981), and cases therein cited.[8] The compensatory damages should be awarded which will, in accordance with the standards asseverated above[9], nullify or equalize the effects of the violation of the automatic stay. Accordingly, in consonance with the findings above made, the sum of $1,000, the value of the gasoline sales which likely would have been made during the July 4 weekend, should be awarded as compensatory damages. The evidence, according to the facts found above, clearly shows that the violation was willful on Mr. Drake's part, justifying an award of punitive damages of $1,500.

■ With respect to the turnover issue, the governing statute is section 542(a) of the Bankruptcy Code, which provides as follows:

"Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease, under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property, or the value of such property, unless such property is of inconsequential value or benefit to the estate."

Accordingly, all the articles on exhibit 2A, a copy of which is attached, except those marked by an asterisk, should be turned over to the plaintiff trustee in bankruptcy.

This includes the Reinell cruiser, which the testimony shows to have been in the custody and safekeeping of defendants since the date of bankruptcy, or its reasonable equivalent in value.[10]

■ It is the trustee's position that she is entitled to much more in the way of damages and much more as a matter of turnover. She contends, in her posttrial brief, that damages for violation of the automatic stay should be in the sum of $125,000. She bases this contention on the following reasoning in her posttrial brief:

"Plaintiff's witness John Campbell testified that the Memorial Day weekend had realized the sale of $160,000 worth of boats. These sales were in the form of orders taken by National Marine for customers. The boats had been ordered from IMP but not yet delivered. John Campbell testified that the customers had not yet paid for these boats but for deposits. Once National Marine was displaced from this location, there was no place to physically deliver the boats. The sales were lost. John Campbell further testified that National Marine was canceled by IMP as one of its dealers. He further testified that the loss of the lake facility was one of the primary reasons for the loss of the dealership.

"John Campbell testified that National Marine's profit would have been 35–40% of gross sales. If National Marine had been able to complete the sales which were ordered over the Memorial Day weekend, National Marine would have expected gross profits between $56,000 and $64,000.00

"Further, John Campbell and the Hodgins testified that the July 4th weekend was traditionally the biggest commercial

---

8. "An award of compensatory damages, costs, and attorney fees is … designed to indemnify and make the Debtor whole for losses suffered by reason of the wrongful acts of the contemnor. Indeed, the very purpose of a civil contempt proceeding, unlike its criminal counterpart, is to coerce compliance with an order of the court and to compensate a party litigant for injuries occasioned by the contemnor's noncompliance." *Matter of Preferred Surfacing, Inc.*, 3 B.C.D. 94, 96 (Bkrtcy.N.D.Ga.1976).

9. "The remedy for such a violation (of the automatic stay) should include all awards necessary to restore the offended party to the *status quo.*" *Matter of Caw*, 16 B.R. 631, 633 (Bkrtcy.W.D. Mo.1981).

10. If it is beyond the power of the defendant to turn over the cruiser, the court will have to convene a hearing to determine its reasonable value which must be turned over in cash.

weekend at the Lake. These employees of National Marine expected to sell boats, gasoline and boating accessories. John Campbell testified that he expected to sell at least as many boats over the July 4th weekend as National Marine had sold over the Memorial Day weekend."

The principal trouble with this analysis is that, as the court has mentioned above, any damages for violation of the automatic stay must be restricted to a brief period of time following the ejection of the debtor from the premises. As observed above, the debtor cannot collect damages for the time period during which its ouster from the premises was due to its own failure to obtain from the bankruptcy court the orders which would have restored it to those premises. Therefore, the July 4, 1986, weekend is the time period for which damages may reasonably be assessed. There is really no factor in the evidence which limits the proposed damages to the sales which would have been made—or could reasonably be expected to have been made—during that weekend. Without evidence which establishes the comparability of the Memorial Day weekend—a weekend which appears to occur at the commencement of the boating season—with the July 4 weekend in terms of sales, the evidence of one-time sales during the Memorial Day weekend cannot be accepted by the court as an accurate barometer of what would have occurred during the July 4 weekend. And, further, it is insufficient, in seeking damages for violation of the automatic stay, simply to demonstrate a loss of *gross* profit. Rather, it must be demonstrated by detailed evidence of the expected expenses that a profit would have in fact been netted. "One seeking to recover damages ... must ordinarily establish that he could have realized a profit or benefit on a full performance of the contract. So, where it is obvious that plaintiff would have more than trivial expense in performing his part of the contract and that the profit on the contract would be substantially less than the contract price, the mere introduction of the contract and a showing of its breach does not make out a prima facie case of damages for the unpaid contract price."

25A C.J.S. Damages section 162(11), p. 116 (1966). In light of these principles, this court does not believe that a mere estimate of the percentage of gross profit (or even of net profit) which might have been derived suffices to establish a reasonable estimate of damages which may have been incurred. Too much, under this particular set of facts, is left to speculation. And "(a)n award of damages may not be based upon mere speculation." *Rosebrough Monument Co. v. Memorial Park Cemetery*, 666 F.2d 1130, 1147 (8th Cir.1981). Therefore, for the separate and independent reasons (1) that the evidence does not reliably show what magnitude of sales might reasonably have been expected during the July 4 weekend and (2) that the evidence does not reliably show that the expenses might have been in making those sales, the court declines to award any damages for loss of sales during the July 4 weekend.

To these reasons, moreover, might be added the consideration of credibility of those testifying that a very high loss would have been incurred. They did so, as mentioned above, without resort to supporting facts which might have lent credibility to the high estimates of loss made by them. Further, they had a distinct bias and interest in the matter, being the officers and former employees of the debtor entity, and this colored their testimony, as was evident from their appearance and demeanor before the court. No evidence was adduced that the sales already contracted for had not been completed. And there was no reliable evidence of what the unmade sales might have been.

█ Finally, the trustee sought turnover of the entire boat dock which had been on the premises formerly occupied by the debtor and which is admittedly subject to a security interest held by the defendants. It was the trustee's contention in the complaint at bar that the security interest was not perfected; that, even if it must be considered as a fixture to the real estate, which it should be as a boat dock physically affixed to the premises, the financing statement which was filed with the Camden

County recorder to accomplish perfection did not contain "a description of the real estate concerned," as required by section 400.9–402 RSMo. A copy of the financing statement itself, however, has not been actually presented to the court so that it is among the exhibits which were offered at trial. Under such circumstances, the court can only say that the authorities, as a *per se* matter, have not always required a metes and bounds description on such financing statements. It is only required that the mortgaged property "be described with sufficient particularity to enable the land to be identified" and "(t)he authorities do not indicate that a legal description is required." *Matter of Beefeaters, Inc.*, 27 B.R. 848, 850 (Bkrtcy.W.D.Mich.1983). "(T)he description need not be such as would enable a stranger to select the property ... a description is sufficient which will enable third persons, aided by inquiries which the instrument itself suggests, to identify the property." *United States v. Oakley*, 483 F.Supp. 762, 764 (E.D.Ark. 1980). Otherwise, the evidence shows the uncontradicted testimony of the defendant Dan Drake to the effect that he filed a financing statement with the county recorder of Camden County. Under such circumstances, it is the burden of the trustee to demonstrate the insufficiency of that filing. "Generally, when the trustee brings an action seeking to exercise his powers under the strongarm clause to avoid a purported security interest, he bears the burden of demonstrating the invalidity or imperfection of that security interest." *Matter of Bergsieker*, 30 B.R. 757, 759 (Bkrtcy. W.D.Mo.1983). According to the evidence which has been placed in the custody of this court, that burden has not been met.

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover from the defendant Dan Drake the sum of $1,000.00 in actual damages and $1,500 in punitive damages. It is further

ORDERED, ADJUDGED AND DECREED that the defendants, within 25 days of the date of filing of this order, turn over to plaintiff all articles not marked with an asterisk on Exhibit 2A plus the Reinell Cruiser, or the equivalent in value.

APPENDIX

EXHIBIT 2A

<u>INVENTORY</u>

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| 5 | Quicksilver Propeller (in boxes) 48-78118A40 Dia. 14½ pt. 17 Alum. | | |
| 1 | 48-78118-170 (not in box) black propeller | | |
| 3 | HC CL24R propeller (not in box) silver color | | |
| 1 | 48-74604-25 propeller silver in color (not in box) | | |
| 1 | 48-74603-25 propeller silver in color (not in box) | | |
| 1 | HC CL24L silver propeller (not in box) | | |
| 2 | 48-75724-23 silver propeller (not in box) | | |
| 1 | 48-8966-25 propeller | | |
| 1 | 48-8980-6A (in box) Dia. 14½ pt. 25 SS Quicksilver propeller | | |
| 2 | 391201 white propeller | | |
| 2 | ✳ 31640-02 (small silver propeller) | | |
| 1 | ✳ 34127S (small silver propeller) | | |
| 1 | 4874888-21 Black propeller | | |
| 2 | 4878118-170 Black propeller | | |
| 2 | 4878120-19 Black propeller | | |
| 1 | 4879576-21 propeller | | |
| 1 | 48-5 ? -19 Black propeller #scratched off | | |
| 1 | 378 Michigan SMC propeller #scratched off | | |
| 4 | 4878122-21 Black propeller | | |
| 5 | 4878122A40 (in boxes) Dia. 13 3/4 x 21 Alum. propeller | | |
| 2 | Line Winder and Rope reel Model 34935 | $6.95 ea. | |

*Handwritten annotations:*

*Stamp:* Case No. Adv. 86-0402-3 CLERK U.S. DISTRICT COURT Exhibits: P ___ D 2A 6/4/87 Case No.

*Left margin:* These should Total 37 Propellers, not 40, 3 of these belong to Wayne Moore

*Center:* (37) left, inventory 40 — DRM/S

✳ Items with asterisk belong to Drake Marine, Inc.
+ Items with cross belong to Wayne Moore

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|----------|------|--------------|-----------------|
| 10 | Ski Tow Handle Puritan | $7.95 ea. | |
| 4 | Water Ski Tow Harness Ski World Puritan | $9.95 ea. | |
| 2 | Nylon Rope (50') CAPROLAN 2000 | $19.95 ea. | |
| 2 | Mooring and Dock Line (25') Puritan | $10.95 ea. | |
| 1 | Ski Master 23m 75' Single Tow Line | $12.95 | |
| 4 | Water Devil Water Ski Tow Line 100' | $16.95 ea. | |
| 5 | Puritan Water Ski Tow Line Single Handle 75' | $6.95 ea. | |
| 3 | Puritan Water Ski Tow Line Double Handle 75' | $9.95 ea. | |
| 6 | Casad Tube (water tube) | $39.95 ea. | |
| 2 | Kransco Tube N-It (water tube) | $39.95 ea. | |
| 3 | Child Life Jackets | | |
| 1 | Adult Life Jacket | $9.95 | |
| 1 | * Viking Quick Release Conversion Kit | $6.50 | |
| 1 | * Attwood 7543 Tiller Line Tightener | $5.40 | |
| 1 | * Attwood 5203 Surface Mount Hinge | $4.50 | |
| 1 | * Teleflex Marine Systems Rocker Switch | $4.95 | |
| 1 | * Attwood 1405 Twist-on Hose Flange | $2.60 | |
| 1 | * Hinged rope deck pipe No. 3021A | $6.55 | |
| 4 | * Spare Tire Carrier | $4.45 ea. | |
| 2 | * Precision Trolling Prop. #757 | $8.95 ea. | |
| 1 | * Marine Switch #200 (Anderson Marine Division) | $3.88 | |
| 1 | * Attwood thru hull fitting | $5.05 | |
| 1 | * Mirax Marine Fuel System-M-128B Electrical Capsule | $11.00 | |

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| 1 | EEZ-In Ladder Catch Locks #65 | $2.50 | |
| 1 | Aqua Stripe – Marine Self-Adhesive Vinyl Accent Striping Tape | $6.00 | |
| 1 | Attwood Lowe Vent #1420 | $10.80 | |
| 1 | U Bolt Bow Eye #3393-3 | $11.45 | |
| 1 | OMC Gas Tank Anchor Kit Kit Pt. #172186 | $5.95 | |
| 1 | Tempo 1D1 TGG Gas Guard #543 | $3.95 | |
| 1 | Taylor Side Mount Deck Hinge #1205 | $3.95 | |
| 1 | 250 Marine Switch (Anderson Marine Division) | $4.74 | |
| 6 | Skipper kit cotter pins | $ .99 ea. | |
| 2 | Boat Horn Refill DOT2Q Model #FVR | $7.98 ea. | |
| 4 | Taylor locking peg #1009 | $ .45 ea. | |
| 1 | Taylor Cruiser & Mark II Ladder Mounting Hardware #60010 | $8.50 | |
| 1 | Marine Bow Tie Down IMMC Size 12" – 60" | $5.80 | |
| 1 | Prop. lock PL-8000 | $11.95 | |
| 2 | Perko Clam Shell Ventilator Fig. 315 SP No. 2 | $1.65 ea. | |
| 2 | Taylor 1162 Turn Latches w/screws | $1.75 ea. | |
| 1 | Taylor Hidden Hold Down Fasteners #1607 | $1.95 | |
| 1 | Attwood wire rope guides 98-3 | $1.30 | |
| 1 | Perko gas cap | $5.75 | |
| 1 | Taylor #1623 External Deck Angles | $6.23 | |
| 3 | Fibergrip MDR-614 (Deck plug) permanent fiberglass hull screw fastener | $1.40 ea. | |

*Handwritten annotations: "mine", "DANS", "DANS"*

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| 2 | Fibergrip MDR-613 Woodscrew anchor | | |
| 1 | Mirax M-82 Mercury Connector | | |
| 1 | Taylor #935 Chrome Plated bow Sockets | $1.90 | |
| 1 | Taylor #1348 Top lok | $2.63 | |
| 4 | Bar Buoy | $1.65 ea. | |
| 1 | Derko #1531 | $2.25 | |
| 1 | Attwood plug | $2.95 | |
| 1 | Fulton Chain hooks | $4.95 | |
| 1 | Perko #757 | $9.90 | |
| 1 | Mirax Fuel Systems M-92 Johnson & Evinrude Connector | $2.50 | |
| 1 | America's Cup Life Jacket (Adult) | $25.95 | |
| 1 | America's Cup Life Jacket Chest 30-52 | $30.00 | |
| 1 | America's Cup Life Jacket (L) Chest size 42-50 | $30..00 | |
| 1 | Puritan Extra Edge Ski World Life Jacket (Model #1042 Small) | $34.95 | |
| 1 | Puritan Extra Edge Ski World Life Jacket (X-Large) | $36.80 | |
| 2 | Paris Life Jacket (1) large adult FV-16 (1) small adult | | |
| 1 | America's Cup x-small #505X | $38.30 | |
| 1 | America's Cup Small #110 | | |
| 3 | Ski-Master #706 Adult (L) | $55.00 ea. | |
| 2 | Ski-Master #705 Adult (M) | $52.00 ea. | |
| 1 | Camper Canvas Top | | |
| 3 | Tie down Kleets 1½ prs. | $14.95 pr. | |

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| 2 pr. | Tie down Kleets (sm) 2 pr. | $10.95 pr. | |
| 1 pr. | Tie down Kleet | $5.70 pr. | |
| 11 | Quicksilver Gear Lube 8 oz. | | |
| 9 | Quicksilver Gear Lube 10 oz. | | |
| 1 | Quicksilver Gear Lube 32 oz. | | |
| 2 | Quicksilver Engine Cleaner | | |
| 9 | Fire Extinguishers Model 210 RFC | $15.95 ea. | |
| 8 | Marine Super Booster TK-7 | $6.95 ea. | |
| 1 | Boat Life Calk & Solvent & Cleaner | $5.95 | |
| 2 | Unique Teak Cleaner | $7.95 ea. | |
| 2 | Silicone Cleaner Wax | $7.55 ea. | |
| 5 | Fiberglass rubbing compound | $8.95 ea. | |
| 1 | Boat Life Calk | $15.95 | |
| 1 | Lloyd Life Calk | $4.95 | |
| 12 | Repair Kits | $1.75 ea. | |

190 SC Blue Carpet

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| 3 | Ensolite Waterski Life Vest Type 3PFD 40-43 | $60.00 ea. | |
| 2 | Ensolite Waterski Life Vest Type 3PFD 37-40 | $55.00 ea. | |
| 11 | Hull Gard Boat Fender 5½ x 20 | $11.95 ea. | |
| 1 | Hull Gard Boat Fender 6½ x 23 | $18.95 | |
| 1 | Hull Gard Boat Fender 6 x 15 | $29.35 | |
| 1 | Boat Ladder (white steps) | $49.95 | |
| 1 | Boat Ladder (wooden steps) | $59.95 | |
| 1 | Boat Ladder (black rubber steps) HOSKINS | | |
| 1 | Leisure Tube 22 Turbo Intertube Skimaster | $120.00 | |
| 1 | #65 Shurlock Ladder catches | $6.00 | |

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| 1 | Aloe Vera Green Stuff Sunburn Relief 4 oz. | $3.95 | |
| 2 | Burnoff with Aloe Vera Sunblock SPF-6 4 oz. | $4.45 ea. | |
| 2 | Burnoff with Aloe Vera Lotion Sunscreen (SPF4) 4 oz. | $4.45 ea. | |
| 2 | Burnoff Gel Jar 4.5 oz. | $4.95 ea. | |
| 1 | Burnoff Aerosol 6 oz. | $5.95 | |
| 2 | Burnoff Sunscreen (SPF4) waterproof 4.5 oz. | $4.95 ea. | |
| 2 | Burnoff Sunscreen (SPF8) waterproof 4.5 oz. | $5.25 ea. | |
| 2 | Burnoff Sunscreen (SPF12) waterproof 4.5 oz. | $5.95 ea. | |
| 1 | Burnoff Sunblock (SPF16) waterproof 4.5 oz. | $5.95 | |
| | Sto-a-way Foldup Sealink ladder – metal – sto-a-way | | |
| | Portable Porthole | | |
| 1 | Skimaster Water Ski Sun Star 67 | $110.00 | |
| 1 pr. | 320ZX Sundash Water ski | $179.90 | |
| 1 | Burnoff moisturizing gel 4 oz. | $3.95 | |
| 7 | Apco Tyle IV Personal Flotation Atlantic Pacific | $11.95 ea. | |
| 1 | Ski Master ski vests child Model 701 – 1 | $35.00 ea. | |
| 2 | Ski Master ski vests child Model 700 – 2 | $35.00 ea. | |
| 2 | America's Cup Toddler Vest Chest 15-21 900 T Model# | $24.00 ea. | |
| | Nyle 49¢/foot rope on spool 1½ dia. | | |

*PARTIAL — Wayne's*

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| * | Cordage Length Meter Model 1430 Serial 7517 *DARD* | | |
| 1 | Spartan Horns Duo Gold Top with silver | $105.85 | |
| 2 | The Wet Set Glossy Mat 72 x 27 Style 59702 | $3.50 ea. | |
| 2 | Pillowed Air Mater American Camper Model 0372 | $5.90 | |
| | IN GLASS CASE | | |
| 4 | Thru Hull Fitting Model 3874-3 Attwood | $3.50 ea. | |
| 6 | Teak Cup Holder - Seateak | $15.95 | |
| 8 | Dual Cup Holder Seateak | $17.95 | |
| 1 | * 953 Flag Pole Socket Taylor 3/4" dia. slanted | $5.95 | |
| 1 | * 963 Flag Pole Socket Taylor 1" straight *DARD* | | |
| 2 | * Flag All Nations Flag & Banner | $35.95 | |
| 11 | Taper flex Glad Snap Model 36696 (S1120) | $3.25 ea. | |
| 1 | Sentinel Model 1151 First Aid Kit | $14.80 | |
| 1 | Step Pads Model 62573 Attwood | $15.95 | |
| 1 | Ski Gloves Lg. Ski Master CSG Deluxe | $12.50 | |
| 2 | EEZ In Boat Mirror Model 70200 1 in box, 1 out | $25.00 | |
| 4 | Boat Horn Falcon Super Sound SH2M 2.1 oz. | $6.25 ea. | |
| 1 | Ski Mirror #9080-4 Yellow Attwood 180° safety | $20.95 | |
| 4 | Ski Mirror 9080-4 in purple box | $20.95 | |
| 1 | Ski Mirror 9080-4 out of box | $20.95 | |

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| | Fender Locks Taylor Model 1010 | | |
| 2 | OMC 982187 Parts | | |
| 1 | DMC 912091 (HSG descrip.) | $29.50 | |
| 1 | DMC (Inv. 10541) 93914 (descrip. Cylinder AY) | $118.40 | |
| 1 | DMC 983732 (descrip. Actuator & VA) (Inv. 19481) | $203.40 | |
| 1 | DMC (Inv. 10541) (descrip. Part 983301 Kit SHI) | $96.30 | |
| 1 | Out of Box: 85216 silver color holds rope | | |

### END OF GLASS CASED ITEMS

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| 1 | Lg. Porthole Window | | |
| | Water Bonnet Model 8314A B/C 7/23/84 | | |

### IN OTHER CABINET

| QUANTITY | ITEM | | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|---|
| Pictured item here | | 8 at | $5.95 ea. | |
| 1 | Hinge | | $2.50 | |
| Pictured item here | | 3 at | $2.00 ea. | |
| Pictured item here | | 1 at | $3.95 ea. | |
| | Perko hook and 2 bolt pcs. | | | |
| | Perko Light | | | |
| 2 | Tempo Marine Propeller Lock 103JEP | | $25.95 | |
| 2 | Boat Transom Hold Downs 32" long Model 6231 | | $8.70 | |

| QUANTITY | ITEM | RETAIL PRICE | WHOLESALE PRICE |
|---|---|---|---|
| 16 | General Marine Toggle Switch 15 amp Model 40020 (15 in boxes and 1 loose) | | |
| 1 | jmme (tiedown on trailer) Ind. Mills & Mfg. with large black metal hook red, white and blue stripe, Model 550 | $9.50 | |
| 2 | dark blue | $18.95 pr. | |
| 4 | Moeller Marine Products Div. Drain Tube | $1.85 | |
| 4 | Moeller Bailer Plug 1" Drain 29000-10 | | |
| 3 | Perko Fender Locks Fig. 1299SP | $8.40 | |
| 1 | Taylor Chrome Internal Eye Ends No. 1202 3/4" tubing | $4.60 | |
| 1 | Gas file chrome M79 Deck Fill Mirax Products | $9.50 | |
| 1 | * White plastic prop 8 x 7½ 385319 | $18.95 | |
| 1 | * Silver prop | $16.95 | |
| 2 | * Sm. white prop | $8.95 | |
| 1 | * Metal prop | $8.95 | |
| 8 | * Square brake lites | $2.40 ea. | |
| 2 | * Brake lites w/o ridges | $2.40 ea. | |
| 6 | * Knob type brake lites | $2.40 ea. | |
| 4 | * Tall corrigated style brake lites | $2.40 ea. | |
| 2 | * Brake lite like regular light bulbs | $3.95 ea. | |
| 1 | * Glass cylinder brake lite | $10.95 | |
| 2 | * Square glass brake lite | $6.95 | |
| 1 | * Clear brake lite | $2.40 | |

## ORDER DENYING PLAINTIFF'S IMPLIED MOTION TO ALTER OR AMEND JUDGMENT TO PROVIDE EXPLICITLY FOR AN AWARD OF COSTS TO THE PLAINTIFF

Formerly, on June 22, 1987, this court issued its final judgment for plaintiff and against the defendant Dan Drake in the sum of $1,000 actual damages and $1,500 punitive damages and otherwise directed that the defendants turn over to the plaintiff certain designated items of property which were determined to be property of the estate. On July 21, 1987, plaintiff filed an untitled letter motion with the court to the following effect:

"In my review of your Findings of Fact, Conclusions of Law and Final Judgment, filed June 22, 1987, I do not find an assessment of costs by the Court.

"I respectfully request that you enter a Nunc Pro Tunc order delineating the party responsible for costs."

■ The motion is, in substance, one for alteration or amendment of the court's former judgment so as to make an explicit determination of which party is entitled to its costs. As such, it must be denied for the separate and independent reasons (1) that it is untimely and (2) that it is without merit. In order for a motion to alter or amend judgment to be entertained by a court, it must be served or filed within ten days of the challenged order or judgment. The court lacks power to extend the time for the filing or service of such a motion. See Bankruptcy Rule 9006(b)(2). Accordingly, the court has no alternative but to deny the implied motion at bar as untimely.

■ Separately and independently, the motion is without merit. Judgments are ordinarily silent as to the taxation of costs. "(I)n the ordinary circumstance when judgment is entered it will be silent as to the exact amount of costs to be recovered by the prevailing party." Peck, "Taxation of Costs in United States District Courts," 42 Neb.L.Rev. 788. Under the circumstances of the rules which govern bankruptcy practice, in which the award or nonaward of costs is confided to the discretion of the bankruptcy court, see Bankruptcy Rule 7054(b), such silence must necessarily mean that each party is to bear its own costs. This seemed particularly appropriate in this action, in which the plaintiff herself filed an amended complaint on February 17, 1987, which deleted the previously-existing prayer for costs. Accordingly, even if a timely motion were before the court, which it is not, it would have to meet with denial at this juncture.

For the foregoing reasons, accordingly, it is hereby

ORDERED that plaintiff's implied motion to alter or amend judgment to provide explicitly for an award of costs to the plaintiff be, and it is hereby, denied.

## ORDER DENYING PLAINTIFF'S "MOTION FOR ORDER NUNC PRO TUNC"

On June 22, 1987, this court issued its judgments to the following effect: (1) "that the plaintiff have and recover from the defendant Dan Drake the sum of $1,000.00 in actual damages and $1,500 in punitive damages" and (2) "that the defendants, within 25 days of the date of filing of this order, turn over to plaintiff all articles not marked with an asterisk on Exhibit 2A plus the Reinell Cruiser, or the equivalent in value."

Now, on the date of July 31, 1987, the plaintiff has filed her "motion for order nunc pro tunc," in which she requests that the judgment be amended (1) so that the actual and punitive damages are awarded against the defendant Drake Marine, Inc., rather than the defendant Dan J. Drake, and (2) so that the turnover order is made against the defendant Drake Marine, Inc., rather than against "defendants."

In support of the motion, the following is stated:

"In open court at the first hearing, the plaintiff requested that defendants Dan J. Drake, Jake S. Drake, Lewis Dysart and Mary Burner be dismissed without prejudice at the beginning of trial as they were not served with process. The Court stated in open court that it would sustain the request.

"The plaintiff proceeded with its evidence in the two hearings which comprised the trial of the merits with the defendant Drake Marine, Inc., as the sole remaining defendant.

"There was sufficient evidence presented at trial to support a judgment against defendant Drake Marine, Inc. as the evidence clearly indicated that defendant Dan Drake was an employee and agent of defendant Drake Marine, Inc., and that defendant Dan Drake acted within the scope and course of his employment with the defendant Drake Marine, Inc.

"Through inadvertence or mistake, the Court entered judgment against defendant Dan Drake, individually, instead of defendant Drake Marine, Inc., who was

at the time the judgment was rendered, the sole defendant in the case.

"The judgment entered June 22, 1987 (page 12 of Order) adjudges damages against defendant Dan Drake and then orders 'defendants' to turn over all articles on Exhibit 2A, except for those not marked with an asterisk and the Reinell Cruiser.

"The judgment erroneously names to (sic) defendant Dan Drake instead of referring to the sole remaining defendant Drake Marine, Inc. This Court has authority to correct its order. *State v. Saitz*, 425 S.W.2d 96, 101 (Mo.1968). In that case, the appellate court held that although the trial court has lost jurisdiction of the case, it still retained enough jurisdiction of its record to 'make it tell the truth.' Plaintiff submits that this means that the court is still empowered to correct a mistake made in the judgment.

"The plaintiff respectfully requests that the Court correct its judgment to read as a judgment against defendant Drake Marine, Inc., as defendant Drake Marine, Inc., was the sole remaining defendant in the case after the other defendants were dismissed. The Court's Order as stated now also directs 'defendants' to turn over the inventory and the boat. The plaintiff respectfully requests that the Court correct this portion of its Order to read the defendant Drake Marine, Inc."

■ The authority to which the plaintiff refers has to do with correcting clerical errors in an order or judgment. It has a counterpart in federal procedure in Rule 60(a), F.R.Civ.P. which provides that "(c)lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any part and after such notice, if any, as the court orders." See also Rule 9024 of the Rules of Bankruptcy Procedure. But that rule was not intended to be utilized to change matters of substance in an order or judgment. "A clerical error is generally defined as an error made by a clerk in transcribing or otherwise ... (C)orrection is

asked, not because the judgment does not embody what the court intended and the record justified, but because it does not embody what the parties intended in making up the record. Such a mistake is one of substance which should not be corrected without a substantial showing." *West Virginia Oil & Gas Co. v. George E. Breece Lbr. Co.*, 213 F.2d 702, 705 (5th Cir.1954). And, in this case, it is too late to make the substantial amendment. Rule 59, F.R. Civ.P., and Rule 9023 of the Rules of Bankruptcy Procedure require the service of a motion to alter or amend judgment within 10 days of the judgment sought to be altered or amended. The court has no power to extend the time for filing such a motion, or for serving it. See Rule 9006(b)(2) of the Rules of Bankruptcy Procedure. The motion should therefore be denied as untimely.

■ Even if the motion were timely, which it was not, it should be denied for failure to contain the substantial showing which is necessary to alter or amend a judgment. The plaintiff states that, in the course of the "initial" hearing, she orally moved the court for voluntary dismissal of her complaint with respect to all defendants except Drake Marine, Inc., on the grounds that she had failed to obtain service of summons and complaint upon them. Subsequent to that hearing, however, she did not follow up by transmitting a proposed order of dismissal to the court, nor in dropping the name of Dan Drake from any of her subsequently filed briefs addressed to the substantive issues in the case. Subsequent to the "initial" hearing of March 2, 1987, this court issued its order directing the plaintiff to show cause why the case should not be dismissed, not only with respect to some of the defendants, but with respect to all of them. The trustee responded to that order with a response filed on May 14, 1987, in which she styled "Dan J. Drake, et al.," as the "defendants" and in which she stated that one of the premier factual issues was whether "Dan Drake had knowledge of the bankruptcy proceeding at the time he ordered the debtor off the premises. If the court concludes that the defendant had knowledge of the filing on July 3, 1986, then the defendant is liable

for a willful violation of the automatic stay and the damages which resulted therefrom." And it seemed therefrom that the trustee was referring to "Dan Drake" and "defendant" interchangeably. Further, the defendant also responded to the court's order with a written response which listed "Dan J. Drake, et al." as "defendants." The court therefore assumed that it was the intention of the parties that Dan J. Drake remain in the case as a named defendant. This was especially so when it appeared that the type of violation of the automatic stay which was pleaded and proved was one in the nature of a trespass upon the real property interest of the debtor corporation. Under such circumstances, the law ordinarily holds that only the individual accomplishing the trespass bears liability. "A corporation may be held liable for trespass committed by its officers or agents, in the course of their employment, upon the lands, personal property or person of another. But if a trespass is committed is committed by the agent or officer wilfully or of his own malice, under color of discharging his duties of his employment ... the corporation will not be liable." 75 Am.Jur.2d *Trespass* Section 36, p. 34 (2d ed. 1974). And, in respect of violations of the automatic stay, "(t)here should be little doubt that where the violation of the stay is inadvertent, contempt is not an appropriate remedy. If, however, the conduct is willful, even if based upon advice of counsel, contempt is an appropriate remedy." 2 Collier on Bankruptcy para. 362.11, pp. 362–71, 362–72 (15th ed. 1987). Thus, if the violation were willful, as it must have been in order to merit damages in contempt, those damages were required to be recovered from Dan J. Drake individually. And, if Dan J. Drake was in fact continuing to be a party to this action, it was appropriate for the court to issue the turnover portion of the judgment against him and the corporation jointly. "Every person is liable in trover who personally or by agent ... commits an act of conversion, or who participates in the conversion ... or who knowingly benefits by its proceeds in whole or in part." 89 C.J.S. Trover and Conversion section 77, pp. 575, 576 (1955). This court therefore entered the judgment which it entered intentionally and not by mistake or oversight. If it falls short of what any of the parties expected, then it appears that they have waited for too long a time on the matter to contest it on direct appeal. The trustee will simply have to depend in any enforcement efforts on a contention that Dan J. Drake, by responding and appearing, or purporting to, entered a general appearance in the action. "(A) general appearance may arise by implication from the defendant's seeking, taking, or agreeing to take some step or proceeding in the cause ... other than one to contest jurisdiction over his person only, or from some act done with the intention of appearing and submitting to the court's jurisdiction." 5 Am.Jur.2d *Appearance* section 14, pp. 490, 491 (2d ed. 1962). Otherwise, it appears that, at least with respect to the actual and punitive damages awarded against Dan J. Drake, the plaintiff permitted the case to escape when she moved voluntarily to dismiss the action with respect to him.

Accordingly, for the foregoing reasons of (1) untimeliness and (2) lack of merit, it is hereby

ORDERED that plaintiff's motion "for order nunc pro tunc" be, and it is hereby, denied.